UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

BLACKWELL PUBLISHING, INC.,   )
ELSEVIER, INC., ELSEVIER B.V.,   )
WALTER de GRUYTER GmbH & CO. KG,   )
MASSACHUSETTS MEDICAL SOCIETY,   )
WILEY-LISS, INC., and   )
WILEY PERIODICALS, INC.,   )
                                                ) CIVIL ACTION NO. 04-10050-NG
      Plaintiffs,   )
                                                )
v.   )
                                                )
FEDERAL STATE OF   )
NORDRHEIN-WESTFALEN, GERMANY,   )
d/b/a ZBMED,   )
      Defendant.   )

## ANSWER OF THE GERMAN NATIONAL LIBRARY OF MEDICINE

The German National Library of Medicine, a unit of the Federal State of Nordrhein-Westfalen (in German, known as Deutsche Zentralbibliothek Fuer Medizin) (the "Defendant," the "Library," or "ZBMed") hereby answers the plaintiffs' Complaint.

### First Defense
### and Preliminary Statement

(a)    Plaintiffs are for-profit publishers of medical and bio-science journals. Defendant, the German National Library of Medicine, is a German state-run institution which supports medical research and public health. The Library pays plaintiffs very substantial annual fees for its subscriptions to plaintiffs' journals.

(b)     Plaintiffs challenge the Library's ability electronically to furnish *single* copies of *single* articles (in picture image) to medical researchers, scholars, and health practitioners who request them via the Library's website. Plaintiffs allege that from September 20, 2003, through January 2004, they ordered from the Library, and received in the United States, *one single copy* of each of 12 different articles that plaintiffs had published in their own journals.

(c)     Such requests from the United States via the Library's website are actually quite limited. For the same period, September 20, 2003, to January 2004, the bulk of fulfilled requests for articles from any of plaintiffs' journals, from throughout the entire United States, came from the plaintiffs themselves. At most, another six (6) U.S. requests for any articles from any of plaintiffs' journals were processed during that same period.

(d)     Since January 2004, the Library has ceased responding to any requests via its website that are known to originate from the United States, pending resolution of this matter and in the interests of exploring in good faith a broader resolution of the business concerns raised by plaintiffs.

(e)     Plaintiffs object to the Library's having responded to requests from medical researchers for access, via the ZBMed website, to single articles contained in plaintiffs' journals. They contend that the Library is interfering with their publishing businesses. Plaintiffs have it backwards. Plaintiffs, by making these claims, are interfering with a government library's proper medical research and public health service functions. In so doing, they are interfering with and restricting the full, proper, and beneficial dissemination of medical science knowledge.

- **The Fair and Limited Use of Publicly Funded Medical Research by a Public Medical Science Library.**

(f)  Plaintiffs' claims interfere with, among other things, the Library's "fair use" rights under 17 U.S.C. § 107. The Library's actions deserve the benefit of the fair use doctrine because:

(i) The uses of articles from plaintiffs' journals were for medical research, scholarship, and/or education purposes;

(ii) The Library's uses were not commercial and they were not undertaken for profit;

(iii) The Library engaged in only limited use of single copies of single articles from journals that contained multiple articles;

(iv) The articles embodied medical research paid for by public funds and public institutions (none of it paid for by plaintiffs); and

(v) Ethical standards that have long governed the field and practice of medical science research prohibit restrictions on the sharing and proper dissemination of scientific and medical research – i.e., restrictions of precisely the kind that plaintiffs seek to impose here. *See* Seventh Affirmative Defense, below.

- **The Library is Engaged in a Non-Commercial Public Health Function.**

(g)  ZBMed is a public medical science library that does not conduct any business or service outside of its proper function as a library run by a government to serve the progress of scientific and medical research and public health. It does not do business; it does not sell either

goods or services for profit[1]; it does not advertise[2]; it is not an actor in any marketplace; and it does not compete with anyone – including plaintiffs. ZBMed purchases books and subscribes to journals, etc. so that it can provide medical science researchers with free access to its collection. That is what libraries do, and it is what they always have done. It is what medical libraries, in particular, must do if they are to carry out their medical research and public health mission properly. ZBMed's activities as a national medical library are typical and proper governmental functions. Like most libraries, it does have a web site, www.zbmed.de, through which it attempts to carry out its public health and governmental functions using new and developing electronic means.

- **Plaintiffs' Practices Conflict with Ethical Standards Long Accepted in the Medical Research Field.**

(h)     Plaintiffs claim, at Paragraph 21 of their Complaint, that they acquired the rights to the articles in their journals by "requir[ing]" the contributing medical researchers to "assign all copyrights for all countries of the world in those articles to the publisher." These kinds of overreaching concessions, which plaintiffs have made a practice of extracting from medical researchers, have become a source of growing concern for universities and public health institutions and governments. Some university libraries, among them Harvard, Duke, Cornell, and others, have begun to drop their subscriptions to some of plaintiffs' journals out of concern over these practices, among other things. Past medical science leaders from the National Institutes of Health have turned to the "open access" model and have begun to establish alternative journals for medical and biomedical sciences under the aegis of the Public Library of

---

[1] The small fee required covers far less than the actual associated costs.

[2] There is no advertising in any commercial sense of that word. The Library does no more than to identify its functions and activities to Library users in such appropriate places as its website.

Science – journals that will not restrict use of medical research as plaintiffs inappropriately seek to do. Parliament in the United Kingdom has recently commenced hearings into the serious and unsustainable problems presented to the scientific community by private for-profit publishers who obtain, at great cost to the public, a "free ride" by selling publicly sponsored research back to the same public research institutions who paid for the research in the first place. All of these new and pressing considerations must be weighed in the mix of the "fair use" factors that are to be balanced under §107.

- **Plaintiffs Seek Windfall: Selling Medical Research Back to the Public Institutions that Paid for and Created It.**

(i)    The doctors, professors, and researchers who supply articles to plaintiffs' medical journals are funded by governments (the defendant and U.S. governments among them), charities, foundations and universities. Their research is paid for by these public institutions and taxpayers, and their writing is also paid for by these public institutions and taxpayers.

(j)    In many cases, the researchers/writers of the articles actually pay the plaintiff publishers to have their works published. This money, too, comes from these same public institutions that paid for and developed the research.

- **The Normal Incentives of Copyright Do Not Apply in the Field of Medical Research.**

(k) Plaintiffs sell their journals back to the very governments, universities, and foundations that paid for the research in the first place. They do so on a for-profit basis, and they charge premium rates to these libraries. While copyright normally functions as an incentive for authors to produce new creative works, this standard model does not apply at all to the field of medical research. The incentives for medical research comes from funding and grants from governments, universities, foundations and charities – not from anything having to do with the

publishing process. The idea that plaintiff publishers should be treated as "owners" of "all rights" to the articles is a dysfunctional fiction that makes no sense in the unique context of medical science research. Despite their protests to the contrary, plaintiffs have increasingly become parasitic intermediaries in the world of medical research.

(l) Under these circumstances, it is appropriate to permit the Library's limited and reasonable uses of articles from plaintiffs' journals under the fair use doctrine.

### Second Defense

As its second defense, Defendant Library responds to the specific allegations of the numbered paragraphs of plaintiff's Complaint as follows:

1. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 1, and therefore they are denied.

2. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 2, and therefore they are denied.

3. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 3, and therefore they are denied.

4. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 4, and therefore they are denied.

5. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 5, and therefore they are denied.

6. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 6, and therefore they are denied.

7. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 7, and therefore they are denied.

8. Defendant denies the allegations of Paragraph 8, except that Defendant admits that the Federal State of Nordrhein-Westfalen is a federal state within the country of Germany, that it oversees the German National Library of Medicine which is also known as "ZBMed," and that its central offices are located at Joseph-Stelzman-Strasse 9, 50931 Cologne, Germany. Further answering, Defendant states that the Library is not engaged in the business of reproducing and distributing published materials, and that it makes no profit when it makes elements of its collection available to medical scientists.

9. The allegations of Paragraph 9 are conclusions of law, to which no response is required. To the extent that a response is required, the allegations are denied. Further answering, Defendant states that even if this Court were to have jurisdiction with respect to the 12 alleged copyright infringements as they are described in the Complaint, still there is no jurisdiction, pendant or otherwise, over any other claims made or alluded to in the Complaint that are unrelated to those 12 alleged infringements.

10. Denied.

11. Denied.

12. Denied.

13. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 13, and therefore they are denied.

14. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 14, and therefore they are denied.

15. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 15, and therefore they are denied.

16. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 16, and therefore they are denied.

17. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 17, and therefore they are denied.

18. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 18, and therefore they are denied.

19. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 19, and therefore they are denied.

20. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 20, and therefore they are denied. Further answering, Defendant states that the research described in the articles in "plaintiff's journals" was paid for and funded by public funds.

21. Defendant is without knowledge or information sufficient to form a belief as to the allegations of Paragraph 21, and therefore they are denied. Plaintiffs' contention that their efforts to "seek out the greatest number of markets" serve to "maximiz[e] dissemination of the article" is false and disingenuous: Plaintiffs' present efforts to limit library uses of the articles in question actually limit and restrict the proper dissemination of scientific and medical research, and do so in a way that is at odds with fundamental ethical standards that are widely accepted in universities and public scientific research institutions.

22. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 22, and therefore they are denied.

23. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 23, and therefore they are denied.

24. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 24, and therefore they are denied. Further answering, Defendant denies that any of the limited instances of U.S. article transmissions that plaintiffs allege could possibly have any material impact on plaintiffs' economic circumstances. Plaintiffs make their money from the captive audience of research libraries that must year after year subscribe to their series, and from the captive group of scientific researchers who pay the plaintiffs to publish their articles. Single readers and users of single articles provide a negligible and dubious source of earnings, as these users will normally look to subscribing libraries in order to have access to these articles for free. There is no substantial economic difference to plaintiffs whether readers' free access to the library is gained electronically or in person.

25. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 25, and therefore they are denied. Further answering, Defendant states that if plaintiffs face any prospect of loss of future revenues, it is not because of the distribution of occasional single copies of articles on a fair-use basis to single isolated users of libraries.

26. Denied. Further answering, Defendant states that ZBMed is a public medical science library that does not maintain any business or service outside of its proper function as a library run by a government to serve the progress of scientific and medical research and public health. ZBMed carries out these typically and properly governmental functions to serve the public good and not for business purposes or for profit. Like most libraries, it does have a web

site (www.zbmed.de), through which it attempts to carry out its public functions using new and developing electronic means.

27. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 27, and therefore they are denied.

28. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 28, and therefore they are denied.

29. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 29, and therefore they are denied, except that Defendant admits that ZBMed has requested that customers identify which of three user groups they might belong to.

30. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 30, and therefore they are denied.

31. Denied. Further answering, Defendant states that to the extent it made any limited uses of some articles published in Plaintiffs' journals, it did so in the belief that its activities were proper and that they did not violate any third party's rights. Plaintiffs apparently imagine that the Library's activities via its website are far more extensive than they actually were; In fact, requests from the United States to the Library's website are quite limited. Plaintiffs allege that from September 20, 2003, through January 2004, Plaintiffs ordered via the ZBMed website, and received in the United States, a single copy of each of 12 different articles that Plaintiffs had published in their journals. For the same period – September 20, 2003 to January 2004 – the bulk of fulfilled requests for articles from *any* of plaintiffs' journals from the entire United States came from the *plaintiffs themselves*. At most, from what the Library can ascertain so far, the Library processed only six (6) other U.S.-based requests for any articles from

any of plaintiffs' journals during that same period. The Library has ceased responding to any requests via its website that are known to originate from the United States, pending resolution of this matter and in the interests of exploring in good faith a broader resolution of the business objections raised by plaintiffs.

32. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 32, and therefore they are denied.

33. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 33, and therefore they are denied.

34. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 34, and therefore they are denied.

35. Denied. Further answering, Defendant affirms that it believes that its conduct has been at all times fair and proper, that its activities properly served the public interest, and that it did not ever knowingly or intentionally violate the rights of any third party, including those of the plaintiffs.

36. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 36 concerning Wiley and Newjen, and therefore they are denied; and denies the remaining allegations of Paragraph 36, except that Defendant admits that ZBMed did on its website state that "Copyright fees are included." Further answering, Defendant states that the statement relating to "copyright fees" correctly reflects the circumstances pertaining to the bulk of ZBMeds' activities via its website in Germany, when copyright collection societies such as VG Wort govern the particular use or copy being made. VG Wort is a copyright fee collection organization established under German law. ZBMed has in the past regularly collected and paid copyright fees to VG Wort. While VG Wort's copyright

fee collection arrangements are now the subject of negotiation/arbitration in Germany, ZBMed has been collecting and holding in reserve funds for payment to copyright owners and publishers via VG Wort pending resolution of the negotiation/arbitration. The statement on ZBMed's site is, hence, fair and correct. In the case of uses which do not call for or require the payment of any such fees, the statement on the ZBMed site cannot be said to be either misleading or incorrect.

37. Denied, except that Defendant admits that it does operate, in collaboration with a German governmental unit (DIMDI), an online facility known as "MedPilot," whose website has different functions than that of ZBMed. Further answering, Defendant states that MedPilot does not independently respond to internet requests for documents.

38. Denied. Further answering, Defendant states that it is improbable that plaintiffs have suffered any harm either from their own requests for their own articles via ZBMed or from the minimal requests of others, and that ZBMed has discontinued responding to any requests to its website that are believed to come from the United States, pending resolution and clarification of the business objections raised by plaintiffs.

39. Denied.

40. Denied.

41. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 41, and therefore they are denied.

42. Denied.

43. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 43, and therefore they are denied.

44. Denied.

45. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 45, and therefore they are denied.

46. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 46, and therefore they are denied.

47. Denied.

48. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 48, and therefore they are denied.

49. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 49, and therefore they are denied.

50. Denied.

51. Denied.

52. Denied.

53. Denied.

54. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 54, and therefore they are denied.

55. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 55, and therefore they are denied.

### First Affirmative Defense

The Court lacks jurisdiction over the person of the Defendant.

### Second Affirmative Defense

The Court lacks jurisdiction over the subject matter of all claims in the action except Counts 1 thru 12.

### Third Affirmative Defense

The Complaint fails to state a claim upon which relief can be granted.

### Fourth Affirmative Defense

The Complaint must be dismissed for improper venue under 28 USC §1400.

### Fifth Affirmative Defense

Defendant, being a foreign state, is immune from the jurisdiction of the Court under the Foreign Sovereign Immunities Act, 28 USC §1602 et seq. Among other things, Defendant's alleged conduct that has been made the subject of this action does not involve or constitute commercial activity; the claims herein are not based on or related to activities carried on in the United States; and Defendant's alleged activities do not have any direct effect within the United States.

### Sixth Affirmative Defense

With respect to activities referred to in the Complaint which occurred outside the United States, which involve witnesses and/or parties outside the United States, and/or which are governed by the laws of countries other than the United States, maintenance of an action in this Court regarding those activities is improper, because an alternative forum is available in those other countries that is fair to the parties and which is substantially more convenient to them, to the witnesses and to the courts. Unless the action is transferred to such alternative fora pursuant to the doctrine of *forum non conveniens,* substantial unfairness and inconvenience will result. The balance of private and public interest factors also favors having such matters heard in such foreign jurisdictions.

**Seventh Affirmative Defense**

The acts alleged by plaintiffs as infringing of their copyrighted materials constitute "fair use" under 17 U.S.C. §107, as set forth in further detail below.

(a)     Defendant repeats and incorporates herein the statements contained in its First Defense above, including paragraphs (a) through (k) thereof.

(b)     Defendant Library's uses of articles from plaintiffs' journals were for research, scholarship, and/or education purposes; defendant's uses were not commercial and were not undertaken for profit; they involved limited use of single copies of single articles from journals that contained multiple articles; and the articles used reflected research paid for by public funds and public institutions (none of it paid for by plaintiffs).

(c)     Moreover, ethical standards that have long governed the field and practice of medical science research prohibit restrictions on the sharing and broad diffusion of the results of such medical research – i.e., restrictions of precisely the kind that plaintiffs seek to impose here. Defendant is a regular subscriber to plaintiffs' journals and is among the large captive audience of public libraries and other publicly funded institutions that pay substantial portions of their annual budgets for plaintiffs' journals; and plaintiffs unfairly and inappropriately press medical research authors to sign over "all rights" to their work to plaintiff publishers.  Governments have increasingly recognized that the overreaching practices of medical science publishers constitute an unacceptable appropriation of control over medical research results -- one that is fundamentally at odds with and detrimental to the public interest in encouraging medical research and broadening access to the benefits of public and charitable funding.

(d)     Defendant's efforts to make research knowledge more widely available to other medical researchers via new electronic technologies are a proper extension of its public health

function as a national medical library. These legitimate activities have little to no impact on the potential market for or value of the plaintiffs' journals. Medical science research is a unique and specialized field of activity, in which the social value and need for fair use rights are singularly compelling and urgent.

### Eighth Affirmative Defense

Defendant's activities that are alleged to have violated plaintiffs' rights are privileged under 17 U.S.C. §108 because, among other things, defendant reproduced no more than one copy of each of the works in question; the copies were made without any purpose of direct or indirect commercial advantage; the journals were maintained as part of a collection open to the public; and the articles at issue are works of medical research and scholarship.

### Ninth Affirmative Defense

Defendant has at all times relevant acted in good faith; if there was any infringement of plaintiffs' journals, the infringement was innocent. Defendant did not believe and had no reason to believe that its acts would constitute an infringement of anyone's copyright.

### Tenth Affirmative Defense

The Complaint is barred, in whole or in part, on the grounds of estoppel.

### Eleventh Affirmative Defense

The Complaint is barred, in whole or in part, by the applicable statute of limitations.

WHEREFORE, Defendant Federal State of Nordrhein-Westfalen respectfully requests that the Court grant judgment in favor of Defendant, dismissing all plaintiffs' causes of action in all respects and granting such other and further relief as the Court deems just and proper together with reasonable attorneys fees, costs of suit, and interest.

DEFENDANT DEMANDS TRIAL BY JURY OF ALL CLAIMS SO TRIABLE.

FEDERAL STATE OF NORDRHEIN-WESTFALEN, GERMANY, d/b/a ZBMED

By its attorneys,

David S. Korzenik (New York DK1767)
(Admitted pro hac vice)
MILLER & KORZENIK, LLP
488 Madison Avenue, 11th Fl.
New York, New York 10022
(212) 752-9200

and

Robert A. Bertsche, BBO #554333
PRINCE, LOBEL, GLOVSKY & TYE LLP
585 Commercial St.
Boston, MA 02109
Dated: May 28, 2004        (617) 456-8018